UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STERLING HOTELS, LLC, a
Michigan limited liability company,

     Plaintiff,                          Case No.  20-10452

vs.                                  Hon. Stephanie Dawkins Davis

SCOTT MCKAY, individually,

     Defendant.

| AKEEL & VALENTINE, PLC | MICHIGAN ATTORNEY GENERAL |
|---|---|
| Shereef H. Akeel (P54345) | William F. Denner (P68875) |
| Hasan Kaakarli (P81099) | Assistant Attorney General |
| Attorneys for Plaintiff | Attorneys for Scott McKay |
| 888 W. Big Beaver, Ste. 420 | 3030 W. Grand Blvd., Ste. 10-660 |
| Troy, MI 48084 | Detroit, MI 48202 |
| (248) 269-9595 | (313) 456-0080 |
| shereef@akeelvalentine.com | DennerB@michigan.gov |
| hasan@akeelvalentine.com | |

## FIRST AMENDED COMPLAINT

**NOW COMES** Plaintiff, STERLING HOTELS, LLC ("Sterling Hotels"), by and through its undersigned counsel, AKEEL & VALENTINE, PLC, and for its First Amended Complaint against Defendant, SCOTT MCKAY, in his individual capacity, states as follows:

## JURISDICTION AND PARTIES

1.    Plaintiff, Sterling Hotels, is a Michigan limited liability company d/b/a Wyndham Garden Sterling Heights (herein referred to as the "Wyndham

Garden" or Plaintiff) located in the City of Sterling Heights, County of Macomb, State of Michigan.

2.     Defendant, Scott McKay, is a State of Michigan Elevator Inspector assigned to inspect elevators in Southeastern Michigan and is being sued in his individual capacity.

3.     This Complaint asserts Inverse Condemnation/Regulatory Taking claims under the Fifth Amendment of the United States Constitution, as well as violations of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution.

4.     Jurisdiction is proper under 28 U.S.C. § 1331 and 42 U.S.C. § 1981.

5.     Venue is proper in this Court under 28 U.S.C. § 1391.

## COMMON ALLEGATIONS

6.     Plaintiff incorporates by reference the foregoing paragraphs, as though fully set forth herein.

7.     Plaintiff, Sterling Hotels, is a historic landmark hotel in the City of Sterling Heights, covering 232,000 square feet and includes restaurants, a large conference center, and an indoor water park.  **Exh. A** – Sterling Hotels History.

8.     Sterling Hotels has five floors above ground and has six elevators. **Exh. B** – Cooper Aff., ¶ 3.

2

9.     Many of Plaintiff's patrons come from out-of-state, as well as within the state, to conduct business at the hotel, including room rentals, conferences, and other activities.

10.    On or around November 19, 2018, the State of Michigan mandated that Plaintiff install a backup power generator to its existing elevators in the event of a power outage.

11.    The State of Michigan and Defendant McKay made such a demand despite not being able to provide any documentation to support that Plaintiff was required to install a generator.

12.    Upon information and belief, no other similar establishment or hotel in the State of Michigan had been requested to install a generator – which can cost in excess of $100,000 – to serve as backup to the existing elevators as was being demanded of Plaintiff.

13.    On or around December 6, 2018, under the threat of closure, and to mitigate its potential damages in the event of a total hotel shutdown if the elevators are disabled by Defendant, Plaintiff appealed for a variance.  **Exh. C** – 12/6/18 Appeal.

14.    On or around June 25, 2019, the State of Michigan's Elevator Safety Board ("Board"), with Defendant present, conducted a hearing regarding variance

requests[1] Sterling Hotels submitted for four of its elevators. **Exh. D** – Elevator Safety Board Ruling.

15.     The Board voted and issued a ruling "*to approve the variance requests and allow all 4 elevators to be placed back into services provided battery lowering be added to the 5 operational elevators in the building within 3 months and added to the 6th elevator prior to being placed back into service.*" **Exh. D** – Elevator Safety Board Ruling.

16.     Upon information and belief, no establishment similarly situated to Plaintiff with a similar type of elevator in the State of Michigan had been ordered to install backup battery power when no backup generator or backup power was ever installed on the elevator.

17.     The Board also scheduled a December 17, 2019 Hearing to review the progress and determine if their Ruling has been complied with. **Exh. E** – Elevators Safety Board Minutes.

18.     Plaintiff followed the Board's ruling in installing battery lowering devices – to serve as backup power in the event of a power outage or fire – as

---

[1] Due to the building being so dated – built in the 1960's – several elevators are very old and required upgrades and variance requests.

averred by Plaintiff's Corporate Area Chief Engineer, Jeff Cooper.[2]  **Exh. B** –
Cooper Aff., ¶¶ 2-4.

19.     Again, upon information and belief, no establishment similarly
situated to Plaintiff with a similar type of elevator in the State of Michigan has
been ordered to install backup battery power.

20.     Plaintiff had sought to schedule an elevator inspection of the four
elevators by an elevator inspector employed by the State of Michigan.

21.     The four elevators that were equipped with the backup batteries were
programmed by elevator manufacturer, ThyssenKrupp, to transit and open to the
*first/main floor* – where the exits are – in the case of a fire or emergency.[3]  **Exh. B**
– Cooper Aff., ¶ 4.

22.     On November 5, 2019, the four elevators that had been equipped with
backup batteries operated as intended and descended to the first/main floor.  **Exh.
B** – Cooper Aff., ¶ 5.

23.     Also, on November 5, 2019, the State of Michigan Elevator Inspector,
Defendant Scott McKay, conducted an inspection of the four operational elevators.
**Exh. B** – Cooper Aff., ¶ 6.

---

[2] The concept is the elevator will transit to the first floor and open up to allow
patrons to exit safely in the event of a power outage or other emergency situation.
[3] The two other elevators are not at issue here.  They are so dated and cannot be
equipped with battery lowering devices.

24.     After testing the four operational elevators that were recently equipped with backup batteries, Defendant Inspector McKay advised Plaintiff that he is failing <u>all</u> of the elevators because *they did not descend to the basement in the event of a power outage or fire*.  **Exh. B** – Cooper Aff., ¶¶ 7-8.

25.     One such elevator that Defendant Inspector McKay closed down does not even have access to the basement, as there is no basement underneath it.  **Exh. B** – Cooper Aff., ¶ 9.

26.     Thus, although Plaintiff installed battery backup devices for emergency conditions – which was not even required by state code and which already operated properly in transiting patrons to the first floor – Defendant was still not satisfied and ordered the closure of all elevators.

27.     Defendant Inspector McKay failed all of the elevators after one of the elevators failed his inspection.  **Exh. B** – Cooper Aff., ¶ 10.

28.     Defendant Inspector McKay's opinion that the elevator should be lowered to the basement puts patrons in harm's way, traps them in the event of a fire, and puts them in an area which is not suited for patrons – emergency or not – as it is an employee only area.  **Exh. B** – Cooper Aff., ¶ 11.

29.     Plaintiff expressed deep concern and advised Inspector McKay that the purpose of the battery powered device is to lower the elevators to the common area on the first/main floor so patrons can exit safely.  **Exh. B** – Cooper Aff., ¶ 12.

6

30.     Plaintiff's elevator contractor, ThyssenKrupp, also advised Inspector McKay of the same.  **Exh. B** – Cooper Aff., ¶ 13.

31.     Even the City of Sterling Heights Fire Marshal, Shawn Allen, agreed with Plaintiff and ThyssenKrupp but indicated that he will defer to Defendant Inspector McKay's opinion.

32.     Still, Defendant Inspector McKay ordered that all of the elevators be shut down even though four of them are fully operational and programmed to lead patrons to the safest exits.  **Exh. B** – Cooper Aff., ¶ 15.

33.     Defendant McKay shut down all the elevators with full knowledge that such a closure would deprive Plaintiff of its intended use of the property – functioning as a multistory hotel.

34.     Defendant McKay knew or had reason to know that shutting down the fully functioning elevators that had all the necessary permits was not supported by any applicable code requirement.

35.     Defendant McKay knew or had reason to know that similarly situated, multi-level hotels with elevators – i.e., those who never had backup power installed on their elevators and/or those that fully complied with state regulations – were treated better than Plaintiff.

36.     Defendant McKay knew or had reason to know that no notice of violation for the elevators was issued to Plaintiff before he shutdown all of the elevators.

37.     Defendant McKay knew or had reason to know that he did not shut down any other similarly situated hotel in the State of Michigan because it did not have a backup generator.

38.     Indeed, at least two hotels located in the same city as Plaintiff – the Holiday Inn Express located at 8515 15 Mile Rd and the Tru Hotel located at 36599 Van Dyke Ave, both in the City of Sterling Heights – were never shut down by the State of Michigan or Defendant McKay; were never required to have a backup power generator; and were never required to get a variance to having a backup power generator, as has been demanded of Plaintiff by Defendant McKay.

39.     Defendant McKay's order of shutting down Plaintiff and treating Plaintiff different than other similarly situated hotels, which include, but is not limited to, the Holiday Inn Express and Tru Hotel listed above, also had the intended effect of preventing Plaintiff from allowing patrons to occupy any rooms above the first floor in Plaintiff's five-story hotel.

40.     Immediately following the Inspector's order to shut down all of the elevators based on their failing his test – that being that the elevators descend to the basement floor rather than the first/main floor where the exits are in the case of a

8

fire or emergency – Plaintiff made several attempts by email to the State of Michigan to prevent the State's draconian and illogical action of shutting down the four operational elevators because they do not transit to the basement.

41.    Plaintiff advised the State of Michigan's Licensing and Regulatory Affairs that there was no notice, paperwork, or citation was provided to advise Plaintiff of an alleged violation, and that Defendant Inspector McKay's opinion that the elevators must go down and open to the basement would put the public in harm's way.  **Exh. F** – Email.

42.    Subsequently, for the first time, only *after* Defendant McKay shut down Plaintiff's elevators, Plaintiff was provided four *unsigned* alleged notice of violations claiming that the battery recall feature for the elevators did not remain operational (which they did, as averred above), did not open properly (which they did) and which did not even have Defendant Inspector McKay's name on it.  **Exh. G** – Four Elevators Memo.

43.    This is in contrast with the two other elevators – which are not at issue here – that were shut down by Defendant Inspector McKay earlier in the week and had Inspector McKay's name on it.  **Exh. H** – Two Elevators Notice.

44.    Additionally, Defendant was advised it was impossible to have the existing elevators operate as Defendant wishes because substantial modifications would be required and would cause an undue hardship on Plaintiff.

45.     Upon information and belief, only Plaintiff has been subjected to such unreasonable demands (i.e., mandating backup power when no backup power was ever installed on the elevators) by Defendant, in comparison to other similar hotels or establishments with similar dated elevators situated in the State of Michigan.

46.     Defendant's action had the intended consequences of causing imminent and immediate harm to Plaintiff.

47.     Defendant's actions significantly harm the public and violate public policy, as it makes emergency situations more dangerous by unloading patrons into the basement – possibly causing them to be trapped – rather than the first/main floor where the exits are.

48.     The shut down by Defendant caused devastating damages and frustrated patrons in that bookings, which included weddings, military, and sport group functions, were canceled.

49.     Indeed, because of Defendant's conduct in locking down the elevators, Plaintiff was not able to rent any rooms above the first level, causing loss of occupancy income.

50.     Defendant did not provide a "'fair procedure' when depriving [Plaintiff] of life, liberty, or property" when he shut down all the elevators, even though only one elevator failed. *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012).

51.     Thus, not only was Plaintiff treated different than other similarly situated establishments by having to abide by more onerous requirements, but Defendant "did not afford [Plaintiff] adequate procedural rights prior to depriving" the property interest at issue. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595 (6th Cir. 2006).

52.     Damages were incurred during the time period leading up to any appeal because all the elevators were shut down by Defendant's actions.

53.     Defendant's elevator shutdown order had the intended consequence of preventing Plaintiff from renting rooms above the first floor, meaning all the rooms on the second through fifth floors were barred from being booked by patrons.

54.     Therefore, there was no "meaningful postdeprivation remedy" available because the damage had already been incurred. *Bass v. Robinson*, 167 F.3d 1041, 1049 (6th Cir. 1999).

55.     With no meaningful postdeprivation remedy available, the postdeprivation remedies were inadequate.

56.     Due to the damages incurred immediately following the shutdown order – i.e., the hotel being barred from renting rooms on the second, third, fourth, and fifth floors – state administrative remedies are inadequate.

57.     Defendant, through his own individual actions, has violated the Constitution.

58.     Defendant intentionally discriminated against Plaintiff by treating Plaintiff less favorably than other similarly situated hotels, as described above, by demanding and subjecting Plaintiff to more onerous requirements to stay open.

59.     Defendant acted with the purpose of creating an adverse impact on Plaintiff.

60.     Defendant applied Michigan's elevator code, regulations, and inspections differently with Plaintiff under the circumstances of this case than he has with any similarly-situated entities.

61.     There was no rational basis for Defendant to treat Plaintiff different than other similarly situated buildings in imposing a generator requirement and later a battery backup when this is not a legal requirement that Plaintiff was subjected to.

62.     Plaintiff's elevators were never equipped with backup power – neither at the time the elevators were installed nor at any time after that.

63.     Despite this, Defendant imposed a requirement that the elevators must have backup power equipped and pass his inspection in order to open.

64.     A reasonable person in Defendant's position would understand that his actions violated established rights.

65.     Defendant's conduct violated clearly established constitutional rights of which a reasonable person would have known.

66.     The contours of Plaintiff's rights are sufficiently clear that a reasonable official would understand that what he is doing violates that right.

67.     The right to due process is "quite clearly established", *Anderson v. Creighton*, 482 U.S. 635, 639 (1987), and Defendant violated Plaintiff's due process rights by: 1) shutting down all elevators even though only one failed his inspection; 2) providing notice of the deficiencies for the elevators on the same day he shutdown all of the elevators but only *after* he had already shut them down; and 3) by shutting down all the elevators, he prevented Plaintiff from meaningful postdeprivation rights because it had already suffered devastating damages by the time any postdeprivation rights could be exercised.

68.     Defendant violated Plaintiff's equal protection rights by requiring Plaintiff to add backup power to all of its elevators, even though none of them were ever equipped with backup power, and then shutting down all of these elevators when they failed his backup power inspection which required all of the elevators to go down to the basement level in the case of an emergency – all of which was not required of any other hotel similarly-situated to Plaintiff and inspected by Defendant.

69.     Defendant was also fully aware that shutting down all of Plaintiff's elevators would have the intended consequence of devastating economic impacts

on Plaintiff and the devastating impact on Plaintiff's distinct investment-backed expectations.

70.     Defendant was aware that his conduct, under the circumstances, would actually violate a clearly established and particularized constitutional right.

71.     This was not a mistaken judgment but a plainly incompetent or knowing violation of the law.

72.     Defendant's conduct – requiring Plaintiff to install backup power on all of its elevators, even though it never had backup power installed onto them and were previously approved for use by the State of Michigan, and then failing all of the elevators despite only one of the elevators failing his test, which had the intended consequence of prevent Plaintiff from renting rooms above the first floor and causing devastating damage to the hotel – would have been clear to a reasonable governmental official that this conduct was unlawful in the situation they confronted.

## COUNT I

**VIOLATION OF THE DUE PROCESS CLAUSE
OF THE FOURTEENTH AMENDMENT
TO THE UNITED STATES CONSTITUTION**

73.     Plaintiff incorporates by reference the foregoing paragraphs, as though fully set forth herein.

74.     Plaintiff is a hotel in the State of Michigan.

14

75.    Plaintiff's Due Process rights includes the right to notice and an opportunity to be heard.

76.    On or around November 5, 2019, acting under the color of law and pursuant to his authority as the State of Michigan's Elevator Inspector, Defendant Scott McKay, informed Plaintiff that he was ordering the shutdown of Plaintiff's four elevators at issue here and prohibiting Plaintiff from renting rooms above the first floor, effective immediately.

77.    Before depriving Plaintiff of its property, Defendant did not conduct a hearing or otherwise afford Plaintiff either notice of the grounds for the violation or a meaningful opportunity to respond as to elevators having to transit to the basement.

78.    Additionally, Defendant's actions in mandating that elevators transit to the basement in the event of a fire or power outage constitutes a state-created danger, as it puts the public – including Plaintiff's patrons – in harm's way.

79.    Defendant's actions in depriving Plaintiff his property absent a hearing or other notice of the grounds for the violation and an opportunity to respond abridges its rights to due process in violation of the Michigan Constitution.

80.    As a direct and proximate result of Defendant's actions, Plaintiff has suffered, and will continue to suffer, substantial damages, including, but not

limited to, the loss of business, loss of customers, loss of goodwill, and other benefits.

**WHEREFORE**, Plaintiff, Sterling Hotels, respectfully requests that this Honorable Court enter a judgment in its favor and against Defendant, Scott McKay, in the amount in excess of $25,000, plus interest, costs, and attorney fees, and grant such further and additional relief as this Court deems just and equitable.

## COUNT II

### VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION

81.     Plaintiff incorporates by reference the foregoing paragraphs, as though fully set forth herein.

82.     Defendant is a state actor subject to the requirements of the Equal Protection Clause of the Constitution of United States.

83.     The purpose of the United States' Constitution's Equal Protection Clause is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination by its agents.

84.     The Equal Protection Clause also prohibits discrimination by the government that burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly-situated without any rational basis for the difference.

85.     Plaintiff here was intentionally treated different and discriminated against, in contrast with others similarly-situated, including other hotels inspected by Defendant who – like Plaintiff – never had backup power installed on their elevators but were later required to install backup power on the elevators and pass an inspection lest Defendant shutdown all the elevators completely, with no rational basis for the difference in treatment.

86.     Defendant's differential treatment was the result of not prosecutorial discretion honestly exercised but of an illegitimate desire to 'get' the Plaintiff.

87.     Plaintiff's mistreatment was also motivated by ill-will harbored by Defendant's employer, the State of Michigan.

88.     Defendant's actions were motivated solely by a spiteful effort to get the Plaintiff for reasons wholly unrelated to any legitimate state objective.

89.     Defendant has denied Plaintiff the equal protection of the laws, which has and will cause Plaintiff excessive financial damages.

**WHEREFORE**, Plaintiff, Sterling Hotels, respectfully requests that this Honorable Court enter a judgment in its favor and against Defendant, Scott McKay, in the amount in excess of $25,000, plus interest, costs, and attorney fees, and grant such further and additional relief as this Court deems just and equitable.

## COUNT III

### INVERSE CONDEMNATION/REGULATORY TAKING

90. Plaintiff incorporates by reference the foregoing paragraphs, as though fully set forth herein.

91. The land use violations issued by Defendant constitutes Inverse Condemnation and a Regulatory Taking without just compensation in violation of Article 10, § 2 of the Fifth Amendment to the United States Constitution.

92. The violations imposed by Defendant have deprived Plaintiff of "all economically beneficial or productive use of land" and, therefore, constitutes a 'categorical' taking." *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1015; 112 S. Ct. 2886; 120 L. Ed. 2d 798 (1978).

93. Alternatively, the regulations result in a taking on the basis of the following factors: (a) the character of the governmental action (the regulation requires Plaintiff to sacrifice economically beneficial use of the hotel for alleged public safety), (b) the economic effect on the land (the violations will cause Plaintiff to lose an almost impossible to calculate amount of money), and (c) the extent by which the violation has interfered with distinct, investment-backed expectations (Plaintiff purchased the five-story hotel to act as a five-story hotel). *K & K Const., Inc. v. Dept. of Nat. Res.*, 456 Mich. 570, 585; 575 N.W.2d 531, 538 (1998).

18

94.     The economic impact of the regulation imposed by Defendant on Plaintiff is devastating, as Defendant's shutdown order for all of the elevators prevented Plaintiff from renting rooms on the second – fifth floors of this 232,000 square foot hotel.

95.     Defendant was fully aware that Plaintiff cannot earn a profit at all under these circumstances.

96.     Plaintiff had distinct investment-backed expectations in the ownership of its property, including that patrons would be able to rent rooms throughout the hotel and utilize the hotel's entertainment, recreational, and food services.

97.     Defendant's actions destroyed any investment-backed expectations Plaintiff had and has caused devastating damages to Plaintiff, including leaving it in economic ruins and preventing it from enjoying economic use of the land.

98.     Defendant did not need to enforce his requirement that Plaintiff's elevators must have backup power installed because Plaintiff's elevators never had backup power installed and never diminished the level of the elevators' safety after their installation.

99.     Defendant also did not need to shutdown all of the elevators, which had the intended consequence of preventing Plaintiff from renting rooms above the first floor to patrons, when only one of the elevators failed his inspection.

100.   Plaintiff has lost economic value in the property as a direct consequence of Defendant's actions.

101.   Defendants shutdown order was not in furtherance of protecting the public from unsafe elevators.

102.   In order to pass Defendant's inspection, Plaintiff would have to place patrons at the doors of a disaster by depositing the patrons – against their wishes – at the basement floor, rather than the main floor where they can safely exit the building, where there may be a fire/emergent situation, and where they are unfamiliar with the location of staircases that could lead them to the main floor to exit safely.

103.   Defendant chose to selectively enforce the backup power regulations on Plaintiff when Plaintiff never had the backup power installed on the elevators.

104.   Defendant also chose to shutdown all of the elevators after one of the elevators allegedly failed his inspection which would have actually led patrons and the public into harm's way.

105.   Defendant's actions led to a substantial decline in the value of Plaintiff's property.

106.   The Defendant abused his powers in his affirmative action directly aimed at Plaintiff's property.

107. The violations have clearly and completely defeated Plaintiff's "distinct investment-backed expectations".

**WHEREFORE**, this Court should enter Judgment in Plaintiff's favor against Defendant, Scott McKay, in an amount equal to all of the damages sustained by Plaintiff, plus costs, including reasonable attorney fees, incurred by Plaintiff as a result of the violation imposed by Defendant.

Respectfully submitted,

**AKEEL & VALENTINE, PLC**

SHEREEF H. AKEEL
By: Shereef H. Akeel (P54345)
Hasan Kaakarli (P81099)
Attorneys for Plaintiff
888 West Big Beaver Road, Suite 420
Troy, MI 48084
(248) 269-9595

Dated:  November 2, 2020

**CERTIFICATE OF SERVICE**

The undersigned says that on **November 2, 2020** (s)he electronically filed a copy of the following document in the above-captioned matter by filing into the Eastern District Court Website:

DOCUMENT(S):  *First Amended Complaint*

and that same is being served upon counsel of record via the court's electronic filing and electronic mail notification system as follows:

William F. Denner
DennerB@michigan.gov

O:\Amerilodge-Sterling Heights\@McKay\1st Amd Complaint.doc