# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

Sterling Hotels, LLC,

|  |  |  |
|---|---|---|
| | Plaintiff, | Case No. 20-cv-10452 |
| v. | | Judith E. Levy<br>United States District Judge |
| Scott McKay, | | |
| | | Mag. Judge David R. Grand |
| | Defendant. | |

_____/

## OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [69]

Before the Court is Defendant's Motion for Summary Judgment ("the Motion"). (ECF No. 69.) For the reasons set forth below, the Motion is DENIED.

## I.   Background

This case is about a dispute between Plaintiff, a Michigan limited liability company, and Defendant, a State of Michigan elevator inspector, who is sued in his individual capacity for shutting down Plaintiff's hotel's elevators in November 2019. (ECF No. 10, PageID.172–173, 176–177.)

Plaintiff has one pending claim against Defendant based on the Due Process Clause of the Fourteenth Amendment.

Plaintiff is a hotel in Sterling Heights, Michigan, which has five above-ground floors and six elevators. (*Id.* at PageID.173.) Plaintiff alleges that four of its elevators are at issue in this case. (*Id.* at PageID.176 n.3.) The elevators have serial numbers 37566, 37567, 37580, and 38750. (ECF No. 69-6, PageID.919.)

This case goes back quite a while. On November 19, 2018, the Michigan Department of Licensing and Regulatory Affairs ("LARA") found that the four elevators violated the applicable 2010 American Society of Mechanical Engineers ("ASME") Code, because the removal of a back-up power generator diminished the safety of the elevators. (ECF No. 69-4, PageID.839.) LARA required Plaintiff to install a backup generator for its elevators or to seek a variance from Michigan's Elevator Safety Board ("ESB"). (*Id.*) Plaintiff appealed this decision and, in the alternative, sought a variance exempting it from this rule. (ECF No. 10-3, PageID.202–204.) The ESB granted it a variance on July 3, 2019. (ECF No. 69-6, PageID.924, 926.) In granting the variance, the ESB "allow[ed] all 4 elevators to be placed back into services provided battery lowering

2

be added to the 5 operational elevators in the building within 3 months and added to the 6th elevator prior to being placed back into service." (*Id.* at PageID.926.) Plaintiff had until October 3, 2019 to add the battery lowering devices. (*Id.*)

During a meeting on September 24, 2019, the ESB noted it had not received permits, which would indicate that the work required by the variance would be timely completed, so it sent a letter to Plaintiff indicating that "if [Plaintiff did] not comply by November 1, 2019, including proper permitting and inspection, the elevators [would] be sealed out of service." (*Id.* at PageID.930.) The ESB issued an amended decision, finding and concluding that

> it was unlikely the necessary permits could be secured, the work performed and the inspections conducted on battery lowering devices which were ordered to be installed, before the 90-day deadline was to expire. The goal of the Board was to prevent the elevators from being sealed out of service, so they extended the deadline by three weeks.

(*Id.* at PageID.932.)

On October 24, 2019, counsel for Plaintiff updated LARA that most of the work had been completed and that an inspector would be coming on November 1, 2019. (ECF No. 69-7, PageID.1013.)

3

Defendant performed inspections on the elevators on November 1 and November 5, 2019, and found deficiencies. (ECF No. 10-2, PageID.199; ECF No. 69-7, PageID.1007.) The elevators were sealed on November 5, 2019. (ECF No. 69-8.)

LARA also issued written notices on November 5, 2019 after Defendant shut down the four elevators, citing issues such as lack of written testing procedures, and problems with doors, door buttons, and visual signals. (*See id.*) In Defendant's deposition, however, he stated that one of the reasons he failed Plaintiff's elevators was that they did not go the basement during a power outage. (ECF No. 69-3, PageID.761.) Jeff Cooper, the Corporate Area Chief Engineer for Plaintiff who was present for the November 5th inspection, stated in an affidavit that Defendant told him "he [was] failing all of the elevators because they did not descend to the basement in the event of a power outage or fire," including one elevator that had "no basement underneath it." (ECF No. 10-2, PageID.199.)

Defendant acknowledged in his deposition that the violation notices sent to Plaintiff after the November 5th inspection did not refer to the elevators' failure to descend to the basement. (ECF No. 69-3,

4

PageID.764.) He stated that he did not know why that rationale was omitted from the notices. (*Id.*)

The elevators were temporarily unsealed in December 2019, and Plaintiff continued to struggle to comply with the ESB's orders, including with respect to certain provisions of the 2010 ASME Code.[1] *See* Mich. Comp. Laws § 408.806(1) (adopting the ASME Code); Mich. Admin. Code r. 408.7003 (same). Relying on the advice of its elevator contractor, Plaintiff eventually acknowledged in a February 26, 2020 appeal to the ESB that the elevators were not in compliance with the 2010 ASME Code. (ECF No. 69-6, PageID.939; *see also* ECF No. 69-9, PageID.1038–1039 (elevator contractor's January 15, 2020 letter stating that the elevators would need certain work to comply with the 2010 ASME Code).)

---

[1] At a December 17, 2019 ESB meeting, it heard testimony from Plaintiff's counsel and others and temporarily unsealed the elevators for use "to allow for all of the elevators to have battery lowering devices that are code compliant, to include working open and flashing hat buttons." (ECF No. 69-6, PageID.935, 937.) It gave Plaintiff until January 31, 2020 to become code-compliant or to have a contractor explain why retrofitting the elevators was impossible. (*Id.*) The elevators failed a January 31, 2020 inspection and most were re-sealed. (ECF No. 69-6, PageID.948–958.) On February 26, 2020, Plaintiff appealed again, (*Id.* at PageID.941), and the ESB, in a June 23, 2020 decision, allowed two elevators to be used. (*Id.* at PageID.1003.) The hotel was sold before the hotel was brought into compliance. (*Id.* at PageID.1004.)

5

Plaintiff filed its initial complaint on February 21, 2020, (ECF No. 1), and amended it on November 2, 2020, (ECF No. 10), with leave of the Court. (ECF No. 9 (permitting amendment after Defendant filed his initial motion to dismiss).) The Court then granted in part and denied in part Defendant's motion to dismiss the amended complaint. (ECF No. 20.) Defendant appealed, (ECF No. 24), and the Sixth Circuit affirmed in part and reversed in part. *Sterling Hotels, LLC v. McKay*, 71 F.4th 463 (6th Cir. 2023). The Sixth Circuit held that Defendant had qualified immunity with respect to Plaintiff's regulatory takings claim, but it allowed Plaintiff's procedural due process claim to proceed. *Id.* at 467–68. The Court had already dismissed Plaintiff's equal protection claim, a decision that Plaintiff did not appeal. *See id.* at 466. In finding that Plaintiff's due process claim survived the motion to dismiss, the Sixth Circuit explained that Defendant "sealed the elevators without providing any advance notice that the elevators should descend to the basement. Thus, [Plaintiff] alleges, [Defendant] failed to provide it with any opportunity to respond to that requirement." *Id.* at 467. The Sixth Circuit rejected Defendant's arguments that the Board's letters announcing the inspection provided notice, because they did not say that the elevators

6

had to descend to the basement during emergencies, in addition to noting that Defendant did not cite any regulation "that could have put Sterling on notice of that putative requirement." *Id.* Nor were notices after sealing the elevators sufficient process. *Id.* The Sixth Circuit panel went on to hold that Plaintiff overcame Defendant's qualified immunity defense, because it is clearly established that an individual must have a hearing before being deprived of a significant property interest. *Id.* at 467–68.

Defendant subsequently filed this motion for summary judgment, (ECF No. 69), which is now fully briefed. (ECF Nos. 72, 74.) The Court heard oral argument on the Motion on May 8, 2025. (ECF No. 75.)

## II.   Legal Standard

### A.   Summary Judgment

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may not grant summary judgment if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light

7

most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (citing *Skousen v. Brighton High Sch.*, 305 F.3d 520, 526 (6th Cir. 2002)).

### B.    Qualified Immunity

Qualified immunity means that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The doctrine protects "all but the plainly incompetent or those who knowingly violate the law." *Dorsey v. Barber*, 517 F.3d 389, 394 (6th Cir. 2008).

Courts must determine "(1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established." *Id*. Courts have discretion to analyze the two prongs of the qualified immunity analysis in either order. *Pearson v. Callahan*, 555 U.S. 223, 242–43 (2009). "[I]f the facts alleged and evidence produced, viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that the officer violated a clearly established constitutional right,

8

dismissal by summary judgment is inappropriate." *Barton v. Martin*, 949 F.3d 938, 947 (6th Cir. 2020).

To be held liable for a constitutional violation, a defendant must have committed the violation through their "own individual actions" and cannot be held liable based on "proximity" to wrongdoing or *respondeat superior*. *Pineda v. Hamilton Cnty.*, 977 F.3d 483, 490 (6th Cir. 2020) (citations omitted). For a right to be clearly established, "the right's contours [must be] sufficiently definite [such] that any reasonable official in the defendant's shoes would have understood that he was violating it." *Schulkers v. Kammer*, 955 F.3d 520, 533 (6th Cir. 2020) (quoting *Kisela v. Hughes*, 584 U.S. 100, 105 (2018)); *see also Cahoo v. SAS Analytics Inc.*, 912 F.3d 887, 898 (6th Cir. 2019) ("the *sine qua non* of the clearly established inquiry is [whether there was] fair warning" (cleaned up)). Plaintiffs have the burden of demonstrating Defendants are not entitled to qualified immunity. *See Bell v. City of Southfield*, 37 F.4th 362, 367 (6th Cir. 2022).

## III.  Analysis

Defendant argues that he should be granted summary judgment, because Plaintiff lacked a protectable property interest supporting its

due process claim and, even if Plaintiff had such an interest, it received due process. Defendant also asserts that he is entitled to qualified immunity.

The Sixth Circuit set forth the following with respect to procedural due process claims:

> The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "[T]he Due Process Clause provides that certain substantive rights—life, liberty, and property—cannot be deprived except pursuant to constitutionally adequate procedures." *Chandler v. Vill. of Chagrin Falls*, 296 F. App'x 463, 468 (6th Cir. 2008) (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985)). . . .
>
> To state [a] procedural due process claim, [a plaintiff] must establish three elements: (1) that they have a property interest protected by the Due Process Clause; (2) that they were deprived of this property interest; and (3) that the state did not afford them adequate pre-deprivation procedural rights. *Chandler*, 296 F. App'x at 469 (citing *Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999)).

*Cahoo*, 912 F.3d at 899–900. As to the third element, plaintiffs must have "an opportunity for a hearing *before* [they are] deprived of any significant property interest," *id.* at 901–02 (emphasis in original) (quoting

10

*Loudermill*, 470 U.S. at 542), through an established state procedure. *Walsh v. Cuyahoga Cnty.*, 424 F.3d 510, 513 (6th Cir. 2005).[2]

Before addressing the substance of Defendant's arguments about procedural due process and qualified immunity, the Court begins with Plaintiff's arguments related to the law-of-the-case doctrine.

## A.    The Law-of-the-Case Doctrine

Plaintiff asserts that, in considering the Motion, the Court must not reconsider the Sixth Circuit's previous rulings due to the applicability of the "law-of-the-case doctrine." (ECF No. 72, PageID.1101, 1103 n.12.)

The Sixth Circuit has set forth the law-of-the-case doctrine as follows:

> The law of the case doctrine precludes a court from reconsideration of identical issues. Issues decided at an early stage of the litigation, either explicitly or by necessary inference from the disposition, constitute the law of the case.

> As we have held, however, this law of the case doctrine is directed to a court's common sense and is not an inexorable command. We previously have stated three reasons to reconsider a ruling: (1) where substantially different evidence is raised []; (2) where a subsequent contrary view of the law is

---

[2] The parties do not dispute that Defendant was acting within established state procedures. *Sterling Hotels, LLC*, 71 F.4th at 467. Had his conduct been random or unauthorized, a different analysis would have been applicable. *See Mitchell v. Fankhauser*, 375 F.3d 477, 481–82 (6th Cir. 2004).

decided by the controlling authority; or (3) where a decision is clearly erroneous and would work a manifest injustice.

*Hanover Ins. Co. v. Am. Eng'g Co.*, 105 F.3d 306, 312 (6th Cir. 1997) (cleaned up). However, the Sixth Circuit's "holding on a motion to dismiss does not establish the law of the case for purposes of summary judgment, when the complaint has been supplemented by discovery." *McKenzie v. BellSouth Telecomms., Inc.*, 219 F.3d 508, 513 (6th Cir. 2000). The Sixth Circuit's prior rulings in this litigation arose during an appeal from a ruling on a motion to dismiss. *Sterling Hotels, LLC*, 71 F.4th at 465. The parties have engaged in discovery since that ruling. Insofar as evidence that has emerged in discovery or other factors support a different outcome, the Court will proceed accordingly, in line with the Sixth Circuit's guidance.

### B.   Protectable Property Interest Under Due Process

Defendant argues that Plaintiff "lacked a protectable property interest in operating the altered elevators until they passed inspection." (ECF No. 69, PageID.622.)

Property interests "are not created by the Constitution itself, but rather by 'existing rules or understandings that stem from an independent source such as state law—rules or understandings that

12

secure certain benefits and that support claims of entitlement to those benefits.'" *Med. Corp., Inc. v. City of Lima*, 296 F.3d 404, 409 (6th Cir. 2002) (quoting *Board of Regents v. Roth,* 408 U.S. 564, 577 (1972)). However, "a party cannot possess a property interest in the receipt of a benefit when the state's decision to award or withhold the benefit is wholly discretionary." *Id.*

Under Michigan law, elevators count as fixtures, meaning that they are property that constitutes part of the hotel building at issue in this case. *See Pierce v. City of Lansing*, 265 Mich. App. 174, 180–81 (2005). Defendant argues that his discretion to seal the elevators means that Plaintiff cannot assert a "cognizable property interest" that could support a due process claim. (ECF No. 69, PageID.624–625.)

In cases where a regulatory scheme affords broad discretion to the state, including permitting the state to deny use of property even when someone meets certain minimum requirements, there is no protected property right. *Silver v. Franklin Twp Bd. of Zoning Appeals*, 966 F.2d 1031, 1036 (6th Cir. 1992) ("If the Board had the discretion to deny Silver a conditional zoning certificate for a condominium complex even if he complied with certain minimum, mandatory requirements, then Silver

would not have a legitimate claim of entitlement or a justifiable expectation in the approval of his plan . . . . [and would therefore] have no property right." (cleaned up)); *see also Bayview-Lofberg's, Inc. v. City of Milwaukee*, 905 F.2d 142, 144–146 (7th Cir. 1990) (holding that the applicable state and local statutes regarding liquor licenses provided so much discretion that there was no entitlement to or property right in such a license).

But the Michigan statutes cited by Defendant do not afford the sort of broad discretion that would undermine Plaintiff's due process claim. Mich. Comp. Laws § 408.819 only permits the sealing of an elevator under certain conditions: when it is unsafe and there is an emergency, when it lacks a certificate of operation, or when it is non-compliant with an inspector's correction order. Elevator inspections must occur "in accordance with the rules promulgated by the [ESB]." *Id.* at § 408.817. The ESB sets forth the specific rules and standards for elevators. Mich. Admin. Code r. 408.7003, 408.7024. And though the ESB can grant exceptions or variances, it must meet certain standards when it does so. Mich. Admin. Code r. 408.7023a(1). There is not language that gives inspectors "broad discretion," for instance asking them to consider what

is desirable, harmonious, appropriate, and so on. *Silver*, 966 F.2d at 1036; *see also Med. Corp.*, 296 F.3d at 410 (explaining that there is no property interest when policies provide the state "unconstrained discretion" with respect to something, but there is such an interest if there is "some policy, law, or mutually explicit understanding that both confers the benefit and limits the discretion . . . to rescind the benefit").

Defendant does not demonstrate he has the sort of broad discretion that would result in Plaintiff being deprived of a protected property interest in the use of its elevators, which allow it to use the building for its intended purpose as a hotel.

## C. Adequate Pre-Deprivation Procedures Under Due Process

The next question with respect to Plaintiff's procedural due process claim is whether it received adequate pre-deprivation procedures. In this case, the Sixth Circuit set forth that due process requires that the state "provide adequate notice and an opportunity to respond before the deprivation" of the use of the hotel elevators. *Sterling Hotels*, 71 F.4th at 467 (citing *Walsh*, 424 F.3d at 513); *Loudermill*, 470 U.S. at 542 ("An essential principle of due process is that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate

15

to the nature of the case." (cleaned up)). "[G]eneral notice" that does not enable "adequate preparation" for meaningful participation in a hearing or proceeding is insufficient to meet the requirements of due process. *Transco Sec., Inc. of Ohio v. Freeman*, 639 F.2d 318, 323 (6th Cir. 1981).

At the motion-to-dismiss stage, the Sixth Circuit held as follows:

> McKay asserts that the [ESB]'s letters announcing the inspection constituted adequate notice. But those letters did not say that Sterling's elevators needed to descend to the basement in emergencies. Nor does McKay point to any regulation that could have put Sterling on notice of that putative requirement. And to the extent McKay relies on notices sent after the inspection, those plainly cannot satisfy the state's obligation to provide notice before it acts. *See Johnson v. City of Saginaw*, 980 F.3d 497, 508 (6th Cir. 2020).

*Sterling Hotels, LLC*, 71 F.4th at 467.

Defendant now cites regulations that it asserts provided Plaintiff with adequate notice. (ECF No. 69, PageID.626–630.) As set forth above, the ESB granted Plaintiff a variance but required it to install a battery lowering device. (ECF No. 69-6, PageID.924, 926.) The addition of such devices could be construed as an alteration, which, under Michigan law, requires an elevator inspection. Mich. Admin. Code r. 408.7010. The 2010 ASME code, which is adopted by statute, Mich. Admin. Code r. 408.7003, requires that elevators descend to the lowest landing in the relevant

16

circumstances. (*See* ECF No. 69-2, PageID.648–649 (ASME A17.1-2010, 3.26.10, Auxiliary Power Lowering Operation) ("When the auxiliary lowering operation has been initiated, the car shall descend directly to the lowest landing . . .").) Michigan state regulations therefore establish that elevators must descend to the lowest landing when the battery lowering devices are operating.

These regulations, which the Sixth Circuit did not consider at the motion-to-dismiss stage, do not resolve the Motion, however. Plaintiff provides other arguments—consistent with the Sixth Circuit's previous analysis—that summary judgment should not be granted. There are material questions of fact about whether Defendant provided a meaningful hearing to Plaintiff, as well as whether the notice of the inspection was sufficient to meet the requirements of due process.[3]

---

[3] Plaintiff's argument that relies upon a so-called "seal out of service policy" is not meritorious, however. (ECF No. 72, PageID.1096, 1112.) A LARA employee sent an email on January 25, 2019 to Defendant and others, which indicated Defendant had been trained to seal elevators after three visits. (ECF No. 72-7, PageID.1479.) Plaintiff does not explain why failing to follow this state policy is a violation of its right to due process. *See Shoemaker v. City of Howell*, 795 F.3d 553, 560–61 (6th Cir. 2015) (distinguishing between the constitutional requirements of procedural due process and strict adherence to a city ordinance). Defendant also asserts that the email to Defendant setting forth the policy is a nonbinding guideline, citing Mich. Comp. Laws § 24.203(7) ("'Guideline' means an agency statement or declaration of policy that the agency intends to follow, that does not have the force or effect of law,

First, Defendant offered shifting justifications for sealing the elevators, which creates a question of fact that precludes summary judgment. The Sixth Circuit has indicated that when the reasons for a government action are "later modified," that creates a concern that the opportunity to be heard is not meaningful. *Transco*, 639 F.2d at 323–24; *see also Wagner v. City of Memphis*, 971 F. Supp. 308, 318–19 (W.D. Tenn. 1997) (explaining that the requirements of procedural due process are not met when "there is no meaningful opportunity to invoke the decision maker's discretion" such as when the outcome of a hearing is predetermined). Changing justifications for deprivation of property also allow a reasonable jury to conclude that the reasons being offered for sealing the elevators were pretextual. *See Pierson v. Quad/Graphics Printing Corp.*, 749 F.3d 530, 540–41 (6th Cir. 2014) (holding that "shifting justifications" for terminating an employee created "a genuine dispute of material fact" that the reasons offered for termination were pretextual). These concerns are applicable here where, as set forth above, there is evidence that Defendant initially stated he was sealing the

---

and that binds the agency but does not bind any other person"). (ECF No. 74, PageID.1860.)

elevators due to failure to descend to the basement, but written notices that were issued later cited other reasons. Additionally, one of the elevators that was sealed lacked access to the basement. (ECF No. 72-6, PageID.1389 (Defendant acknowledging that one elevator did not descend to the basement); ECF No. 10-2, PageID.199 (witness affidavit asserting that Defendant stated he was failing all elevators for not descending to the basement, including the one that lacked basement access)). A reasonable jury could conclude that these shifting justifications indicate a lack of a meaningful hearing before Plaintiff was deprived of its property interest, in addition to indicating that the reasons offered for sealing the elevators in the written notices were pretextual.

Second, Defendant offered inadequate notice, which also precludes summary judgment. The Sixth Circuit has set forth that

> [d]ue process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1949). Or, as recently expressed, the purpose of notice is to apprise the affected individual of, and permit adequate preparation for, an impending hearing. *Memphis Light, Gas & Water Division v. Craft*, 436 U.S. 1, 98 (1978).

*Transco*, 639 F.2d at 323; *see also Flaim v. Med. Coll. of Ohio*, 418 F.3d 629, 639 (6th Cir. 2005) ("All that is required by the Due Process Clause, which sets a floor or lower limit on what is constitutionally adequate, is sufficient notice of the charges and a meaningful opportunity to prepare for the hearing." (cleaned up)).

Plaintiff argues that the ESB "did *not* alert Plaintiff to any Elevator Code or Michigan statute requiring a specific test or inspection to pass beyond simply installing the backup battery lowering device." (ECF No. 72, PageID.1110 (emphasis in original).) The ESB's initial decision to grant Plaintiff a variance required the installation of battery lowering devices but did not reference inspections. (ECF No. 69-6, PageID.924, 926.) When the ESB extended the deadline for compliance on September 30, 2019, it "found it was unlikely the necessary permits could be secured, the work performed and the *inspections conducted on battery lowering devices which were ordered to be installed*, before the 90-day deadline was to expire." (*Id.* at PageID.932 (emphasis added); *see also id.* at PageID.930 (referencing "proper permitting and inspection").)

A reasonable jury could understand the ESB's September 30, 2019 decision's reference to "inspections conducted on battery lowering devices

which were ordered to be installed" as announcing a limited inspection to confirm that Plaintiff had complied with the ESB's order by installing battery lowering devices. (*Id.* at PageID.932.) The September 24, 2019 meeting minutes are also consistent with such an interpretation. (*Id.* at PageID.930.) Ultimately, Defendant performed a more broad-ranging inspection, as indicated by the violations referenced in the written notices issued after the inspection. (*See, e.g.*, ECF No. 69-8, PageID.1018.) Even though a Michigan statute requires inspections of altered elevators, *see* Mich. Admin. Code r. 408.7010, there was not notice that such a general inspection was set to take place in November 2019 when the elevators were sealed. A reasonable jury could therefore find that Defendant violated Plaintiff's procedural due process rights by failing to provide adequate notice of the inspection, thereby preventing Plaintiff from adequately preparing for it. The Sixth Circuit reached that conclusion at the motion-to-dismiss stage, and Defendant has not pointed to any new evidence, change in the law, or clear error that would justify departing from the Sixth Circuit's conclusion that Defendant's conduct did not satisfy due process. *Hanover Ins. Co.*, 105 F.3d at 312.

21

The Court emphasizes that its holding does not impose burdensome demands on Michigan state elevator inspectors—or ESB—as they "protect[] . . . the general public" by overseeing the "minimum safety requirements" for elevators. Mich. Admin. Code r. 408.7001. It simply requires that inspectors refrain from offering shifting justifications for the sealing of elevators, as well as justifications for sealing elevators that impose impossible requirements (such as requiring elevators without basement access to descend to the basement). It also requires pre-deprivation notice of inspections that is consistent with procedural due process by providing an adequate opportunity to prepare. In these specific and limited circumstances, there is a disputed question of material fact about whether those requirements were met.

### D.   Violation of Clearly Established Constitutional Rights

Defendant asserts that he is entitled to qualified immunity. (ECF No. 69, PageID.621–622.) To assess whether qualified immunity applies, courts must determine "(1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established." *Dorsey*, 517 F.3d at 394.

Defendant is not entitled to qualified immunity. As set forth above, based on a review of the record in a light most favorable to Plaintiff, its procedural due process rights were violated. Further, Plaintiff's procedural due process rights were clearly established. The Sixth Circuit held that there was clearly established law regarding Plaintiff's procedural due process rights at the motion-to-dismiss stage:

> The Supreme Court has repeatedly held that the Due Process Clause requires "that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest." *Cleveland Bd. Of Educ. v. Loudermill*, 470 U.S. 532, 542, (1985) (emphasis in original); *Boddie v. Connecticut*, 401 U.S. 371, 379, (1971). McKay does not argue that any exception to that clearly established rule even arguably applied to his conduct here. Thus, Sterling's right to advance notice was beyond debate, and McKay is not entitled to qualified immunity.

*Sterling Hotels*, 71 F.4th at 468.

Defendant does not provide any reason to depart from the Sixth Circuit's ruling that Plaintiff's rights were clearly established. He argues that "McKay's conduct was authorized by Michigan law." (ECF No. 69, PageID.633.) But he fails to adequately address the specific conduct that constitutes rights violations: shifting justifications for sealing the elevators and lack of notice of the type of inspection he conducted. The

23

Court cannot ignore the portions of the record that weigh against Defendant's position. It must instead view "the facts alleged and evidence produced . . . in the light most favorable to the plaintiff." *Barton*, 949 F.3d at 947. Doing so precludes holding that Defendant's conduct was authorized by state law and was therefore consistent with procedural due process.

Defendant also relies upon *Feathers v. Aey*, 319 F.3d 843 (6th Cir. 2003), to argue that he is entitled to qualified immunity "because his alleged actions were not objectively unreasonable under the circumstances known to him." (ECF No. 69, PageID.634.) *Feathers* holds that there is a third prong of the qualified immunity analysis that requires courts to "determine whether the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Feathers,* 319 F.3d at 848 (internal quotation omitted). The portion of the ruling cited by Defendant is no longer good law. *See Brown v. Lewis*, 779 F.3d 401, 417 (6th Cir. 2015) ("[T]here is no separate 'objective unreasonableness' prong [in the qualified immunity analysis.]"); *Gray v. Shelby Cnty.*, Nos. 22-5542/5543/5544, 2023 WL 5237373, at *2 n.1 (6th

24

Cir. Aug. 15, 2023) (recognizing the abrogation of the objective unreasonableness prong of the qualified immunity analysis in the Sixth Circuit). Defendant's reliance on *Feathers* is therefore inapplicable.

The Sixth Circuit held at the motion-to-dismiss stage that Plaintiff's procedural due process rights were clearly established. *Sterling Hotels*, 71 F.4th at 468. Defendant does not offer any justification for departing from the Sixth Circuit's analysis and conclusions. Accordingly, the Motion is denied, because there is a genuine question of material fact about whether Defendant violated Plaintiff's clearly established constitutional right to due process.

## IV.   Conclusion

For the reasons set forth above, the Court DENIES Defendant's Motion for Summary Judgment. (ECF No. 69.)

IT IS SO ORDERED.

Dated: June 11, 2025                    s/Judith E. Levy
Ann Arbor, Michigan                   JUDITH E. LEVY
                                                    United States District Judge

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or first-class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 11, 2025.

s/William Barkholz
WILLIAM BARKHOLZ
Case Manager